## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **DAVID B. WALKER,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 19-cv-3784 (TSC) |
| | ) | |
| **MATTHEW P. DONOVAN,** | ) | |
| **Former Acting Secretary of the Air Force,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

Plaintiff Col. (ret.) David B. Walker brings this case against Defendant Matthew P. Donovan, former Acting Secretary of the Air Force ("the Air Force"), under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  Compl., ECF No. 1, ¶ 1.  Walker seeks an order compelling the Air Force to perform an adequate search for records responsive to his FOIA request, and to release documents allegedly improperly withheld.  *Id.*  Walker has moved for partial summary judgment.  Plaintiff's Motion for Summary Judgment ("Pl.'s MSJ"), ECF No. 17.  The Air Force opposed Walker's motion and cross-moved for summary judgment. Defendant's Cross-Motion for Summary Judgment ("Def.'s MSJ"), ECF No. 24.  For the reasons set forth below, the court will DENY Walker's motion and will GRANT in part and DENY in part the Air Force's cross-motion.

## I.    BACKGROUND

Walker is a former Chief of Staff - Air of the Delaware Air National Guard.  Compl. ¶ 12.  While in that position, on October 24, 2018, Walker received a Letter of Admonishment

("LOA"), accusing him "of being derelict in performance of his duties while serving as the Vice Commander, 166th Airlift Wing, in that he allegedly failed to support the commander's Fraud, Waste, and Abuse Program." *Id*. at ¶ 13; Compl., Ex. A, ECF No. 1-3. Walker made repeated requests for access to documents that supported the LOA, as well as for documents that would help him respond to the LOA. *Id*. at ¶ 15. His requests went unanswered, and he alleges that he felt compelled to retire on February 1, 2019. *Id.* at ¶¶ 16-18.

On February 9, 2019, Walker submitted to the Air Force a "Request for Discovery and FOIA Request" for numerous types of records related to the LOA and the Report of Investigation ("ROI") that resulted in the LOA, as well as for certain records from the Delaware Air National Guard concerning himself and others. *Id*. at ¶ 19; Compl., Ex. B, ECF No. 1-4; Pl.'s Statement of Material Facts ("P-SMF"), ECF No. 17-2, ¶¶ 5, 8-9, 18, 22, 26, 31, 33, 35, 37, 39, 43. Walker also sought records of complaints to the Department of Defense Inspector General. P-SMF, ¶ 43.

On February 26, 2019, the Air Force responded to Walker's discovery request and released certain information and withheld other documents. Compl., Ex. C, ECF No. 1-5. No reference was made to Walker's FOIA request. *Id*. On July 27, 2019, Walker renewed his FOIA request. Compl., Ex. F, ECF No. 1-8. In response, on August 16, 2019, the Air Force informed Walker by email that his FOIA request had initially been denied pursuant to Exemption 7(A) of the FOIA, because of the existence of ongoing law enforcement proceedings. Compl., Ex. H, ECF No. 1-10. The Air Force then stated that because the investigation had been completed, his FOIA request would be processed. *Id*. On August 29, 2019, Walker appealed the Air Force's response. Compl., ¶ 28. The Air Force proceeded to make periodic releases of information responsive to Walker's requests, including after this litigation commenced. Def.'s Statement of

Material Facts ("D-SMF"), ECF No. 24-2, ¶¶ 5-6, 17-26.  The Air Force withheld certain

information pursuant to Exemptions 5, 6 and 7(C) of the FOIA.  D-SMF, ¶ 27.

## II.      STANDARD OF REVIEW

The fundamental purpose of the FOIA is to grant public access to government

documents.  *Waterman v. IRS*, 61 F.4th 152, 156 (D.C. Cir. 2023).  To prevail in a FOIA case, a

requester must show that an agency has improperly withheld agency records responsive to the

request.  *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989); *see* 5 U.S.C.§ 552(a)(4)(B).

The court reviews the agency's assertion of FOIA exemptions to withhold information *de novo*,

5 U.S.C. § 552(a)(4)(B), and the agency bears the burden of showing that the withheld

information falls within the exemption claimed.  *Pub. Citizen Health Rsch. Grp. v. FDA*, 185

F.3d 898, 904-05 (D.C. Cir. 1999).  FOIA cases are typically resolved on motions for summary

judgment.  *Brayton v. Off. of the U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011).  Summary

judgment is appropriate for the moving party that demonstrates that "there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

## III.     ANALYSIS

### A.  THE SEARCH

In a challenge to its response to a FOIA request, an agency must establish that it has

conducted a search reasonably calculated to uncover all responsive records.  *See, e.g., Baker &*

*Hostetler LLP v. U.S. Dep't of Com.*, 473 F.3d 312, 318 (D.C. Cir. 2006).  The agency must

show "beyond material doubt that its search was reasonably calculated to uncover all relevant

documents."  *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir.

2011) (internal quotations and citations omitted).  The FOIA does not require that an agency

search every record-keeping system when responsive documents are likely to be located in one

place. *Kowalczyk v. U.S. Dep't of Just.*, 73 F.3d 386, 388-89 (D.C. Cir. 1996).  Accordingly, the question is not "'whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate.'" *Steinberg v. U.S. Dep't of Just.*, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting *Weisberg v. U.S. Dep't of Just.*, 745 F.2d 1476, 1485 (D.C. Cir. 1984).  The agency must provide a sufficiently detailed declaration that identifies the search terms used, describes the type of search performed, and avers that all files likely to contain responsive documents were searched. *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999).

In response to Walker's FOIA request, Verona Anderson, a paralegal specialist employed by the Air Force Inspector General Office's Senior Official Inquiries Directorate, was tasked with performing a search for responsive records.  Anderson states that, due to the nature of her job, she knew that information pertaining to Walker's ROI would be located on the Air Force Inspector General Office's Senior Official Inquiries Directorate ("SAF/IGS") shared drive. Declaration of Verona Anderson ("Anderson Decl."), ECF No. 24-3, ¶¶ 6-8.  The SAF/IGS shared drive is the principal records system "where SAF/IGS stores investigation for future retrieval[,]" and this "shared drive is where records responsive to the FOIA request would reasonably be found." *Id.* at ¶ 8.  Records on this drive are indexed by the name of the subject of the investigation and a case number, and each case has its own folder and sub-folders. *Id.* at ¶ 6. Anderson was familiar with Walker's ROI from having worked on it, and she located Walker's folder on the shared drive and then conducted a search of that folder for each portion of Walker's FOIA request. *Id.* at ¶¶ 7, 9-33.  The Air Force also searched the Automated Case Tracking System database. *Id.* at ¶ 28.

The Air Force proffered the declaration of Mark Dorgan, Director of the Freedom of Information Act, Privacy and Civil Liberties Office at the Department of Defense, Office of Inspector General ("DoD OIG"), who states that his office received a referral of Walker's FOIA request and concluded that responsive records in the DoD OIG likely would be held by the Office of the Deputy Inspector General for Administrative Investigations and the Defense Hotline.  Declaration of Mark Dorgan ("Dorgan Decl."), ECF No. 30-3, ¶¶ 11-13.  Both offices searched for records responsive to Walker's FOIA request using specific search terms.  Dorgan Decl. ¶¶ 14-20.  This included, among other things, a search of the Defense Case Activity Tracking System database, which contains information on all incoming allegations.  *Id.*

Walker argues that searching only the SAF/IGS system was inadequate, although he suggests no alternative locations where a search for responsive records should have been undertaken.  Pl.'s Opp., ECF No. 26-1, at 13, 18.  In response, the Air Force submitted the Dorgan Declaration describing the searches performed at the DoD OIG.  ECF No. 30-3.  Walker's claim that the Air Force failed to explain why it would be burdensome to have searched other agency record systems, Pl.'s Opp. at 13, 18, shows a misunderstanding of an agency's search obligations under the FOIA.  As explained above, an agency is only required to perform a reasonable search, which consists of searching records and systems where responsive records are reasonably likely to be located.  *Ancient Coin Collectors Guild*, 641 F.3d at 514.

Walker also argues that Anderson's search was deficient because she stated that ordinarily she would start a FOIA search with a case tracker and search for the subject of the request, but she did not do that in this case.  Pl.'s Opp. at 17.  Anderson explained, however, that she uses the case tracker when she is trying to determine whether a case that is the subject of the FOIA request even exists on the shared drive.  Here, she did not use the case tracker because she

already knew that the Walker case was located on the shared drive, where it was located on that drive, and she was able to locate it because she had previously worked on the case.  Anderson Decl. ¶¶ 6-7.  Walker points to no authority requiring an agency to use a particular search method when it is not needed.  *See* Pl.'s Opp. at 17.  Here, a search using the case tracker only would have yielded information Anderson already had – that a case involving Walker existed on the shared drive.

Walker next argues that his FOIA request was not only for his file but also for records pertaining to an investigation with a specific number, ROI S8352P, which pertained to him and another subject, and that Anderson retrieved only documents pertaining to Walker but not to the other subject.  Pl.'s Opp. at 18.  In fact, Anderson made clear that she searched the SAF/IGS shared drive using the search term "S8352P" and "retrieved every resulting document."  Anderson Decl. ¶¶ 9-10.

Walker also claims that he requested records from the Delaware Air National Guard, but there is no evidence that a search for responsive records was undertaken at the Guard.  Pl.'s Opp. at 18-19.  Yet both the Declaration of Lieutenant Colonel Eby ("Eby Decl.") and the Air Force's *Vaughn Index* state that Delaware Air National Guard documents were included in the Air Force's production.  Eby Decl., ECF No. 24-4, ¶ 22; *Vaughn Index*, ECF No. 24-4, Entries 23, 51, 52.  Indeed, Walker attaches to his motion for partial summary judgment Eby's final response on behalf of the Air Force, which addresses Walker's request for documents from the Delaware Air National Guard.  Pl.'s MSJ, Ex.1, ECF No. 17-3, ¶ c.

Walker next argues that in the introductory portion of paragraph 3d of his request he sought a range of documents that would "support" him (which the court takes to mean exculpate him), including but not limited to one addressing the credibility of another individual, yet

Anderson limited her search to documents containing the word "credibility."  Pl.'s Opp. at 19; Pl.'s MSJ, Ex. 1 at 3.  Although Walker is correct that Anderson searched the ROI for witness statements using the word "credibility," she also asked the Investigating Officer if there were any credibility assessments in the ROI.  Anderson Decl. ¶ 12. The Investigating Officer identified a witness interview in the ROI that would be responsive, and that record was processed, along with the rest of the records in the ROI.  *Id.*  Walker offers no suggestion for what kind of additional search should have been undertaken in response to his vague request, especially given that the entire case file was searched and processed.

As part of his request for documents that supported him, Walker sought transcripts and recorded interviews pertaining to three identified individuals: Walker, Colonel Ptak and Major General Timmons.  Pl.'s MSJ, Ex. 1 at 2, d(1)-(6).  Walker claims that Anderson's search was too narrow because she only searched for interview transcripts and recordings by the identified individuals, instead of interviews *pertaining* to the identified individuals.  Pl.'s Opp. at 19. Although Walker is correct, *see* Anderson Decl. ¶ 13 ("I found wav files and transcripts for Colonel (Ret[ired]) Walker and Colonel Ptak, but I did not find one for Major General Timmons."), Anderson also searched for "records (unredacted) of interviews in which questions were asked about or witnesses gave testimony regarding Col (Ret.) Walker, Col Ptak or Maj Gen Timmon."  *Id.* at ¶ 14.  This search would have encompassed all of Walker's requested information regarding these individuals.

Walker also argues that with regard to paragraphs 3e(1), 3e(2), and 3g of Walker's FOIA Request, seeking information regarding witness credibility, Anderson inappropriately limited her search to the word "credibility."  Pl.'s Opp. at 20.  Given that these three paragraphs seek information regarding any assessment of the credibility of identified individuals, it was hardly

unreasonable for Anderson to search for information about "credibility."  Anderson Decl. ¶¶ 15-16, 18.

Walker claims that he requested information pertaining to a timeline of the events that were investigated but that "Anderson merely relied on what she was told by the [Investigating Officer] that there was no timeline evidence other than witness interviews."  Pl.'s Opp. at 20; Anderson Decl. ¶ 19.  Declarants in FOIA matters can rely upon statements made to them in their official capacities. *See Willis v. U.S. Dep't of Just.*, 581 F. Supp. 2d 57, 66 (D.D.C. 2008). The fact that Walker received a timeline of events in a Memorandum for the Record produced, Pl.'s Opp. at 20, does not mean that Anderson's search was inadequate.  To the contrary, it means that information responsive to a request for a timeline was located in another manner and produced.

Walker requested a particular message referenced in an interview transcript.  Pl's MSJ, Ex. 1 at 6, i(8).  Anderson states that any relevant emails would have been exhibits in the investigation.  Anderson Decl. ¶ 25.  Walker counters that Anderson's knowledge is irrelevant and a search for the identified message was required.  Pl.'s Opp. at 20.  Agency declarants, however, are permitted to rely on their knowledge of the agency's systems and processes.  *See Flores v. U.S. Dep't of Just.*, 391 F. Supp. 3d 353, 362 (D.D.C. 2019).  Walker offers no evidence to undermine or contradict Anderson's statement that "any relevant emails" would have been included in the ROI investigation, which was processed for Walker.  Anderson Decl. ¶ 25.

Walker argues that Anderson inappropriately limited her search to the SAF/IGS database in response to his request for a "[c]omplete and unredacted copy of the AF102 Inspector General Complaint [which concerned Col. Ptak] and any associated investigative file and report, filed 25 Jul 2018 by Col (Ret.) Walker with the DE Air National Guard," as well as other reports

regarding or mentioning Col. Ptak.  Pl.'s MSJ, Ex. 1. ¶¶ j, n, o; Pl.'s Opp. at 21.  Anderson

searched in the ACTS database using Colonel Ptak's name and did not locate an AF102

complaint from July 2018.  Walker argues that the ACTS database would not include complaints

against non-senior officials, and that Col. Ptak was not a senior official.  Pl.'s Opp. at 21.

Walker ignores, however, the fact that Anderson did check an alternative database, which located

responsive records pertaining to Colonel Ptak.  Anderson Decl. ¶¶ 28, 32.

　　　　With respect to Walker's request for documents submitted to the DoD Hotline, Walker

contends that the wrong database was searched because Anderson refers to searching "our

database," which presumably means the SAF/IGS shared drive.  Pl.'s Opp. at 21 (citing

Anderson Decl. ¶¶ 29).  The Eby Declaration, however, makes clear that the Air Force referred

these requests to the Department of Defense and then the Air Force disclosed the information the

Department provided to Walker.  Eby Decl. ¶ 11; Dorgan Decl. ¶¶ 10-21; *Vaughn Index*, Entry

66.  Consequently, the search performed for this portion of the request was adequate.

　　　　Finally, Walker argues that the *Vaughn Index* suggests that additional responsive

documents have not been located and produced and thus the Air Force has acted in bad faith.

Pl.'s MSJ at 11-15; Pl.'s Opp. at 13-17.  In particular, he identifies certain transcripts or other

memoranda that were processed for release, yet no corresponding recording was produced nor

were documents referred to in those transcripts or memoranda.  Pl.'s Opp. at 14-17.  The Air

Force explains that either the transcripts and other documents identified by Walker were

withheld in full, do not exist, or were released to Walker.  *See* Def.'s MSJ at 7-8; Def.'s Reply at

16-17 and the declarations cited therein.  The Air Force's inability to locate certain documents

does not undermine the adequacy of the search.  *See PEER v. U.S. Sec., Int'l Boundary & Water*

*Comm'n*, 740 F.3d 195, 200 (D.C. Cir. 2014) (noting that "an agency's failure to turn up every

responsive document in an initial search is not necessarily evidence of bad faith").  Moreover, contrary to Walker's claim of bad faith, the Air Force has made several releases of information, including rectifying unintentional omissions once brought to light.  *See* Def.'s Reply at 16-18. Such action is evidence of a good faith attempt to produce responsive records, not bad faith. "[T]he additional releases suggest 'a stronger, rather than a weaker, basis' for accepting the integrity of the search."  *Meeropol v. Meese*, 790 F.2d 942, 953 (D.C. Cir. 1986) (quoting *Military Audit Project v. Casey,* 656 F.2d 724, 754 (D.C. Cir. 1981)).

The court concludes that the Air Force's declarations satisfy the requirement that an agency perform a reasonable search.  Walker has pointed to no evidence that would undermine these declarations.

**B.      FOIA EXEMPIONS 6 and 7(C)**

Exemption 6 permits the withholding of "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  In assessing the applicability of Exemption 6, courts weigh the "privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of personal privacy."  *Lepelletier v. F.D.I.C.*, 164 F.3d 37, 46 (D.C. Cir. 1999); *Chang v. Dep't of Navy*, 314 F. Supp. 2d 35, 43 (D.D.C. 2004).

Exemption 7(C) exempts from disclosure information compiled for law enforcement purposes when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5. U.S.C. § 552(b)(7)(C).  Similar to Exemption 6, a determination regarding whether information has been properly withheld under Exemption 7(C) necessitates a balancing of the individual's right to privacy against the public's right of access to information in

government files.  "[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Lepelletier,* 164 F.3d at 46 (quoting *U.S. Dep't of Def. v. F.L.R.A.*, 510 U.S. 487, 497 (1994)) (alterations in original).  "Information that 'reveals little or nothing about an agency's own conduct' does not further the statutory purpose."  *Beck v. U.S. Dep't of Just.*, 997 F.2d 1489, 1493 (D.C. Cir. 1993).  Where a legitimate privacy interest is implicated, the requester must "(1) show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake, and (2) show the information is likely to advance that interest."  *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 158 (2004).  If a document invades a third party's privacy and sheds no light on government functions, it may be withheld under Exemption 7(C).  *See, e.g., U.S. Dep't of Just. v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 774 (1989).

Pursuant to Exemption 6, coextensively with Exemption 7(C), the Air Force withheld "the names and/or identifying information of third parties mentioned in the investigation, corresponding exhibits, and emails."  Eby Decl., ¶ 19.  This court need only consider the withholdings under Exemption 6 if it concludes that Exemption 7(C) does not apply to any withholdings.  *See Reps. Comm.*, 489 U.S. at 762 n.12 ("Because Exemption 7(C) covers this case, there is no occasion to address the application of Exemption 6."); *Coleman v. Lappin*, 607 F. Supp. 2d 15, 23 (D.D.C. 2009) ("If the Court determines that information properly is withheld under one exemption, it need not determine whether another exemption applies to that same information." (citing *Simon v. U.S. Dep't of Just.*, 980 F.2d 782, 785 (D.C. Cir. 1992)).

Walker argues that Exemption 7(C) does not apply because the Air Force has failed to demonstrate that the records at issue were compiled for law enforcement purposes, a threshold requirement for the invocation of an Exemption 7 subsection. 5 U.S.C. § 552(b)(7). In particular, Walker contends that a law enforcement purpose must focus on an alleged illegal act that constitutes a violation of criminal law and that the misconduct of which he was accused did not involve any illegal acts that violated criminal law. Pl.'s Opp. at 31-32. Walker's reliance on *Stern v. FBI*, 737 F.2d 84, 89 (D.C. Cir. 1984), for this proposition, however, is perplexing—and futile—given that the D.C. Circuit in *Stern* expressly stated that "the type of law enforcement to which Exemption 7 is addressed includes the enforcement of both civil and criminal federal laws." *Stern*, 737 F.2d at 89.

Walker's claim that the investigation involved an administrative process fares no better. *See* Pl.'s Opp. at 32. Administrative investigations may also be covered under Exemption 7. *Mittleman v. Off. of Pers. Mgmt*, 76 F.3d 1240, 1243 (D.C. Cir. 1996) (federal employee background investigations satisfy Exemption 7's threshold). As the D.C. Circuit made clear, "[i]n assessing whether records are compiled for law enforcement purposes, this circuit has long emphasized that the focus is on how and under what circumstance the requested files were compiled, and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding. . . [T]he purpose of the investigatory files is the critical factor." *Jefferson v. DOJ Off. of Prof. Resp.*, 284 F.3d 172, 176-77 (D.C. Cir. 2002).

Walker was found derelict in the performance of his duties when he discouraged Col. Ptak "from reporting potential fraud, waste, or abuse in response to Colonel Ptak's report, in violation of Delaware Code, Title 20, Section 15l(b)(2) and Article 92, Uniform Code of Military Justice." Compl., ECF No. 1-3. This finding was a result of an Air Force administrative

investigation of fraud, waste, and abuse conducted by the Air Force's Inspector General Office.
Eby Decl., ¶ 17.  An investigation into a potential violation of a statute easily satisfies Exemption
7's requirement of a law enforcement purpose.  *See Jefferson*, 284 F.3d at 178-79 (reiterating
that Exemption 7 "'covers investigatory files related to enforcement of all kinds of laws,'
including those involving 'adjudicative proceedings'" such as Office of Professional
Responsibility conduct if such inquiries are for "violations of law" and not for "oversight of the
performance of duties" (quoting *Rural Hous. All. v. U.S. Dep't of Agric.*, 498 F.2d 73, 81 n.46
(D.C. Cir. 1974)); *Stern*, 737 F.2d at 89 ("By focusing on specific and potentially unlawful
activity by particular employees, the investigation went beyond general monitoring of agency
activities.").

As mentioned above, here the Air Force applied Exemption 7(C) (in tandem with
Exemption 6) "to withhold the names and/or identifying information of third parties mentioned
in the investigation, corresponding exhibits, and emails."  Eby Decl., ¶ 19 & Ex. A.  Eby states
that "[d]isclosure of their names and/or other personal information could subject them to possible
harassment and undoubtedly result in invasions of personal privacy."  Eby Decl., ¶ 19.

The D.C. Circuit has held that Exemption 7(C) applies to law enforcement records that
implicate the privacy interests of third parties unless there is an overriding public interest in
disclosure.  *See Schrecker v. DOJ*, 349 F.3d 657, 661 (D.C. Cir. 2003).  Absent the showing of
an overriding public interest, information that would identify third parties in law enforcement
records is "categorically exempt" from disclosure under Exemption 7(C), to the extent that the
information would identify a third party.  *Nation Magazine, Wash. Bur. v. U.S. Customs Serv.*, 71
F.3d 885, 896 (D.C. Cir. 1995).   As the Circuit has explained, "[w]e have never required
repetitive, detailed explanations for each piece of withheld information – that is, codes and

categories may be sufficiently particularized to carry the agency's burden of proof." *Judicial Watch, Inc. v. FDA,* 449 F.3d 141, 147 (D.C. Cir. 2006).  Because the Eby Declaration states that the information withheld in the responsive documents consists of the names or other information that would identify third parties, further description of the privacy interest at stake is unnecessary, especially given that the investigation was one involving potential fraud, waste or abuse by a federal employee.  *See Computer Professionals for Social Responsibility v. U.S. Secret Service*, 72 F.3d 897, 906 (D.D.C. 1996) ("Exemption 7(C) protects the privacy of all individuals who can be identified in the records of the Service's telephone fraud investigation because there is no public interest that would be advanced by the disclosure.").  Walker's claim that additional detail was required to establish the privacy interests at stake, Pl.'s Opp. at 33-36, is unavailing.

In balancing the privacy interests at stake against the public interest in disclosure, the Air Force concluded that disclosure of the information withheld would reveal nothing about the operations and activities of the Air Force.  Eby Decl., ¶ 20.  Courts have traditionally protected information that reveals nothing about the operations and activities of the government and could subject these individuals to harassment in the conduct of the official duties and in their private lives. *See, e.g.*, *Nation Magazine,* 71 F.3d at 896.

Walker argues that he seeks information regarding an investigation done by the Air Force, which would shed light on the Air Force's investigatory processes and whether they involved any misconduct, especially given the number of Airmen who have committed suicide in recent years while being investigated.  Pl.'s Opp. at 34-35.  But Walker points to no evidence of misconduct during the investigation, nor does he claim that the investigation at issue relates to any suicide.  *Id*.  The Supreme Court in *Nat'l Archives and Records Admin. v. Favish*, 541 U.S.

157, 174 (2004), made clear that when the public interest asserted rests on a claim that government officials acted improperly in performing their duties, the requester "must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred."  Walker's failure to do so here is fatal to his alleged public interest argument.

Finally, Walker argues that certain information released to him in response to his discovery request to the Air Force, which contained restrictions on the information's dissemination, was withheld in response to his FOIA request, and that the withheld information "clearly is relevant to Col. (ret.) Walker."  Pl.'s MSJ at 10 (citing Pl.'s Ex. 5, ECF No. 18 (filed under seal)).  Walker cites no authority for the proposition that relevance is to be considered in the Exemption 7(C) balancing test.  Pl.'s MSJ at 10; Def.'s MSJ at 15.  As the court has already explained, it is not.  Walker also argues that his Exhibit 5 shows that no FOIA exemption justifies the withholding of information under the FOIA that was released to him in discovery. Pl.'s Opp. at 10.  On the contrary, the D.C. Circuit has stated that "not all documents available in discovery are also available pursuant to FOIA."  *Stonehill v. IRS*, 558 F.3d 534, 539 (D.C. Cir. 2009).  Walker's vague claim that no FOIA exemption can justify the redactions to information he received in discovery cannot overcome the Air Force's specific showing that the privacy interests at stake warrant protection under the FOIA.  *See* Eby Decl., ¶¶ 16-20.

Accordingly, disclosure of the information withheld under Exemption 7(C) would constitute an unwarranted invasion of privacy and was properly withheld.[1]

---

[1] As noted above, because the court concludes that Exemption 7(C) was properly asserted to withhold information, it need not address the applicability of Exemption 6.

**C. FOIA EXEMPTION 5**

FOIA Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5).  The exemption protects records that ordinarily would be privileged in the civil discovery context, and thus encompasses the deliberative process privilege, the attorney client privilege, and the attorney work-product doctrine.  *See Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 148-49 (1975) ("*NLRB*"); *Waterman*, 61 F.4th at 156-57.

The Air Force has moved for summary judgment with respect to Exemption 5 on the grounds that one document, Document No. 24 (also called Exhibit 23), was withheld in full based on  attorney-client privilege.  Def.'s MSJ at 18-19.  The Air Force explains that Document No. 24 consists of a legal review and advice prepared by the Air Force Judge Advocate with respect to the investigation of Walker and another individual and offers a recommendation to the commander as to whether to approve the investigation's findings.  *Id.*; Eby Decl., ¶ 22.  Notably, however, neither the Eby Declaration nor the accompanying *Vaughn Index* expressly invoke the attorney-client privilege for that document.  Eby Decl., ¶ 22 & Ex. A, *Vaughn Index*, p. 7 # 24.

Walker did not respond to the Air Force's invocation of the attorney-client privilege for Document No. 24.  Pl.'s Opp. at 40.  Consequently, the court will treat the Air Force's claim as conceded.  *See Hogan v. Hayden*, 406 F. Supp.3d 32, 42 (D.D.C. 2019).

Instead, Walker points to Document No. 66 on the *Vaughn Index*, which was partially withheld under Exemptions 5, 6 and 7(c).  Eby Decl., Ex. A, *Vaughn Index*, pp. 17-18 # 66.  Although the *Vaughn Index* cites the deliberative process privilege for Exemption 5 for that document, it does not indicate whether the information withheld is the same information that is withheld under Exemptions 6 & 7.  *Id.*  Moreover, as Walker correctly observes, the *Vaughn*

*Index* provides a woefully inadequate justification for the invocation of the deliberative process privilege.

To properly invoke Exemption 5's deliberative process privilege, an agency must show that withheld documents are both "predecisional" and "deliberative." *U.S. Fish & Wildlife Serv. v. Sierra Club*, 141 S. Ct. 777, 788 (2021). "A document is predecisional if it was 'generated before the agency's final decision on the matter' and deliberative if it was 'prepared to help the agency formulate its position.'" *Waterman*, 61 F.4th at 156 (quoting *U.S. Fish & Wildlife Serv.*, 141 S. Ct. at 786). The privilege applies to documents "reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *NLRB*, 421 U.S. at 150 (quotation omitted).

The deliberative process privilege also protects factual materials that are closely intertwined with opinions, recommendations, and deliberations. *Ancient Coin Collectors Guild*, 641 F.3d at 513 ("[T]he legitimacy of withholding does not turn on whether the material is purely factual in nature or whether it is already in the public domain, but rather on whether the selection or organization of facts is part of an agency's deliberative process."). Thus, "[p]urely factual material usually cannot be withheld" unless "the selection or organization of the facts was part of the agency's deliberative process." *Waterman*, 61 F.4th at 158 (quoting *Ancient Coin Collectors Guild*, 641 F.3d at 513).

Walker correctly argues that the *Vaughn Index* fails to adequately explain the application of the deliberative process privilege to Document No. 66. Pl.'s Opp. at 40. The Air Force attempted to rectify this deficiency in its reply brief by filing the Dorgan Declaration and, for the first time in briefing, asserted the deliberative process privilege with respect to Document No. 66. With respect to Document No. 66 the declaration states:

> The DoD OIG relied on the deliberative process privilege to withhold information within the released pages and in six full pages that contain communications between DoD OIG investigators and collected case information and investigative courses of action.  Such information is properly withheld pursuant to this privilege as it reflects the on-going investigation and potential decisions, as opposed to a final determination reflecting the Agency's adopted approach or external responses.  I determined after a line-by-line review that any purely factual information is inextricably intertwined with deliberative information. I also determined that the release of this information or the six pages would chill the frank communications necessary in a meaningful decision-making process.

Dorgan Decl., ¶ 24.  There is no discussion of how this information is deliberative in nature, such as whether it consists of opinions and/or recommendations of a subordinate to a superior.  *See Heffernan v. Azar*, 317 F. Supp.3d 94, 131 (D.D.C. 2018) (the agency must explain "the deliberative process involved pertaining to the challenged records, the role the information withheld played in that process, and the role and the decision-making authority of the individuals involved in the creation of this withheld information").  Additionally, the brief reference to the factual information fails to adequately explain how it is "inextricably intertwined with deliberative information."  *See* Dorgan Decl., ¶ 24.

Nonetheless, the issue of this document cannot be resolved on the current record because neither party moved for summary judgment with respect to this document.  Walker only moved for partial summary judgment and did not challenge the invocation of Exemption 5.  *See generally* Pl.'s MSJ.  The Air Force only moved for summary judgment with respect to Exemption 5's application to Document No. 24/ Exhibit 23, Def.'s MSJ. at 18-19, which no longer seems to be at issue.  *See* Pl.'s Opp. at 40.

Accordingly, the court will deny without prejudice the Air Force's cross-motion for summary judgment as it pertains to the application of Exemption 5 to Document No. 66.

### D.  SEGREGABILITY

Under the FOIA, if a record contains information exempt from disclosure, any "reasonably segregable," non-exempt information must be disclosed after redaction of the exempt information.  5 U.S.C. § 552(b).  Non-exempt portions of records need not be disclosed if they are "inextricably intertwined with exempt portions."  *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).  To establish that all reasonably segregable, nonexempt information has been disclosed, an agency need only show "with reasonable specificity" that the information it has withheld cannot be further segregated.  *Armstrong v. Executive Office of the President*, 97 F.3d 575, 578-79 (D.C. Cir. 1996) (quotation omitted); *Canning v. Dep't of Justice*, 567 F. Supp.2d 104, 110 (D.D.C. 2008).  When an agency demonstrates that it has undertaken a "page-by-page" review of all the documents, and then submits a declaration attesting that the information that is withheld is not reasonably segregable, this is sufficient to show that an entire document, or particular information within a document, cannot be produced.  *Juarez v. U.S. Dep't of Justice*, 518 F.3d 54, 61 (D.C. Cir. 2008); *Beltranena v. U.S. Dep't of State*, 821 F. Supp. 2d 167, 178–79 (D.D.C. 2011).

The Eby Declaration states that the Air Force conducted a page-by-page review of the withheld information to ensure all reasonably segregable information was released, and that no additional reasonably segregable information can be disclosed.  *Id.* at ¶ 23.  Eby states that all segregable information was released to Walker and that any nonexempt information that was not released is "either inextricably intertwined with exempt information or it would constitute an essentially meaningless set of words and phrases."  *Id.*

Thus, because the Air Force carefully reviewed the material withheld and determined that no additional non-exempt information could be released, the court concludes that the segregability requirement has been met.

### E.   WALKER'S REMAINING ARGUMENTS

Walker argues that the Air Force's delay in responding to his FOIA request shows bad faith, which rebuts the presumption of good faith to be accorded agency declarations.  Pl.'s Opp. at 8-9, 22.  *See SafeCard Services v. SEC,* 926 F.2d 1197, 1200 (D.C. Cir. 1991) (agency declarations are "accorded a presumption of good faith")*.*  On the contrary, a delay in responding to a FOIA request, without more, does not give rise to a finding of bad faith.  *See, e.g.*, *Budik v. Dep't of Army*, 742 F. Supp.2d 20, 32-35 (D.D.C. 2010) (finding that the Army's delay in responding to requests, discrepancies concerning page counts, lack of notice to plaintiff regarding her right to administratively appeal, and improper redaction of signature block are not sufficient to demonstrate bad faith); *Fischer v. Dep't of Justice*, 723 F. Supp. 2d 104, 108 (D.D.C. 2010) (rejecting plaintiff's arguments that "defendant's failure to produce documents until . . . after litigation commenced, evinces bad faith or an inadequate search"); *Calvert v. United States*, 715 F. Supp.2d 44, 47-48 (D.D.C. 2010) (dismissing plaintiff's argument that delay in producing responsive records demonstrated that search was not done in good faith).

Moreover, here the Air Force has corrected errors and provided Walker with additional releases of information.  Def.'s MSJ at 3, 8, 13 n.4, 23-25; Def.'s Reply at 3 n.2, 13.  Walker points to no evidence suggesting that the release of additional information undermines the agency's withholding of other information.  Pl.'s Opp. at 25-26, 37.  As noted above, it evinces good faith on the agency's part.  *W. Ctr. For Journalism v. IRS*, 116 F. Supp.2d 1, 10 (D.D.C. 2000) (agency acted in good faith by making supplemental releases of information).

Walker also argues that the Air Force's invocation of Exemption 7(A) at the outset of the investigation was without basis.  Pl.'s Opp. at 7-8.  The court disagrees.  Not only is Walker's claim that the records were not compiled for law enforcement purposes without basis, *see supra* Section III.B, but the Anderson Declaration states that when Walker's FOIA request was received, his case "was still in the 'command action process,' meaning Colonel (Ret.) Walker, the subject of our SAF/IGS investigation, was waiting for disciplinary action to be taken based on the investigation, and it is Department of the Air Force Inspector General . . . policy not to release any documents until command action is complete."  Anderson Dec. ¶ 4.  Indeed, Exemption 7(A) applies only while an investigation is open, and the Air Force appropriately dropped its assertion of Exemption 7(A) once the investigation had been concluded.  *Id.* at ¶ 5. This does not show bad faith.  *Cf. Khatchadourian v. Def. Intel. Agency*, 453 F. Supp.3d 54, 79 (D.D.C. 2020) ("DIA was entitled to reprocess the records and change its mind about whether they were classified.  Agencies frequently do this, and oftentimes they realize that they can release documents they previously thought should be exempt.").

Finally, Walker's request for attorney's fees is premature and improperly raised.  Pl.'s Opp. at 6, 41.  Parties seek relief from the court by way of a motion, not in an opposition brief. Moreover, the fee analysis requires a party to first demonstrate prevailing party status, which Walker at this stage cannot do.  *See, e.g., Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011) (discussing the two-step analysis for fees).

## IV.   CONCLUSION

For the reasons set forth above, the court will DENY Walker's motion for partial summary judgment, ECF No. 17, and will GRANT in part and DENY in part the Air Force's cross-motion for summary judgment, ECF No. 24.  The Air Force's motion will be GRANTED

with respect to all issues except the applicability of Exemption 5 to Document No. 66.  The

agency will be given an opportunity to renew its dispositive motion with respect to the

applicability of Exemption 5 to Document No. 66.

Date:  March 31, 2023

_Tanya S. Chutkan_
TANYA S. CHUTKAN
United States District Judge